Kimberley Hanks McGair, OSB #984205
Trish A. Walsh, OSB #101604
kmcgair@fwwlaw.com
twalsh@fwwlaw.com
Farleigh Wada Witt
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

      Attorneys for Defendant Rivermark Community Credit Union

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| SANDRA JIMENEZ, | Case No. 3:15-cv-00128 |
| Plaintiff, | RIVERMARK COMMUNITY CREDIT UNION'S RESPONSE TO PLAINTIFF'S MOTION TO DISQUALIFY FARLEIGH WADA WITT |
| v. | |
| RIVERMARK COMMUNITY CREDIT UNION, AMERICAN ASSET RECOVERY, CHRISTOPHER PAYNE, and ANTHONY PAYNE JR., | |
| Defendants. | |

Defendant Rivermark Community Credit Union ("Rivermark") submits this response to Plaintiff Sandra Jimenez's Motion to Disqualify Farleigh Wada Witt from representing Rivermark in this action (Dkt. No. 5). This response is supported by the Declaration of Margot Seitz ("Seitz Dec."), the Declaration of Kimberley Hanks McGair ("McGair Dec."), the Declaration of Harold B. Scoggins III ("Scoggins Dec."), the Declaration of Gayle Gustafson ("Gustafson Dec."), the memorandum below, and the balance of the court file in this matter.

# MEMORANDUM

## I.    Summary of Argument.

The law firm of Farleigh Wada Witt is not disqualified from representing its long-time client, Rivermark, in this case for numerous reasons—chiefly among them because Mr. Aroche, Plaintiff's husband, was never a prospective client of this firm and does not have any interests in the present litigation.  Additionally, even if Mr. Aroche and/or Plaintiff could establish that they were prospective clients of this firm, Ms. Seitz, the sole Farleigh Wada Witt attorney who spoke briefly over the phone with Mr. Aroche prior to the initiation of this lawsuit, did not receive any information from Mr. Aroche that could be harmful to Plaintiff.  Further, even if Ms. Seitz had received disqualifying information, Farleigh Wada Witt qualifies for the exception provided in Oregon Rule of Professional Conduct 1.18(d)(2) because Ms. Seitz took reasonable measures to avoid exposure to more disqualifying information than was reasonably necessary to determine whether to represent Mr. Aroche and/or Plaintiff, Ms. Seitz was timely screened from any participation in this case, and this firm provided written notice promptly to Plaintiff's counsel and Mr. Aroche.  Moreover, Plaintiff is not currently and was never a client of this firm.  Therefore, Plaintiff's motion to disqualify should be denied.

## II.    Factual Background.

Farleigh Wada Witt has represented Rivermark for at least twenty years.  Scoggins Dec. ¶ 2.  On or about February 12, 2015, Plaintiff, through counsel, provided notice to Rivermark's counsel at Farleigh Wada Witt that this firm was allegedly "conflicted from representing Rivermark in this matter because it already consulted with Mr. Aroche[,]" Plaintiff's husband, who is not a party to this lawsuit.  Declaration of Francisco Aroche ("Aroche Dec."), Ex. 2 (Dkt. No. 6-2 at 2).  Specifically, the notice alleged that "Mr. Aroche previously confided in [this] firm and obtained advice about this matter."  *Id.*  Promptly upon receiving such

notice, this firm conducted an investigation of the facts implicated in Plaintiff's allegation of conflict and discovered the facts set forth below.  Scoggins Dec. ¶¶ 3–5.

Prior to the initiation of this lawsuit, in or around January 2014, Mr. Aroche—on a single occasion—contacted an attorney at this law firm, Margot Seitz, to inquire about possible representation of his wife.  Seitz Dec. ¶ 2.  To the best of Ms. Seitz's present recollection, Mr. Aroche told her that a company attempted to repossess his vehicle and that during the repossession, someone involved had allegedly shoved or punched his wife.  *Id.* ¶ 3.  He also stated that his minor daughter saw this alleged event and that he was concerned for her safety. *Id.*  In response, before Mr. Aroche told Ms. Seitz any further details about the potential case, Ms. Seitz told Mr. Aroche that Farleigh Wada Witt generally does not handle cases like the one he described involving allegedly wrongful repossession and a potential assault.  *Id.* ¶ 4.  Ms. Seitz also indicated that she does not handle criminal matters and that he may want to seek advice about criminal assault and whether to file a police report.  *Id.*  She asked Mr. Aroche for the name of the repossessing creditor and indicated that Farleigh Wada Witt frequently represents creditors and that there also may be a conflict for this reason.  *Id.*  Upon being told the name of the creditor, Ms. Seitz ascertained that there was a conflict and declined representation. *Id.*  Ms. Seitz informed Mr. Aroche of the conflict.  *Id.*  At that point, either Mr. Aroche asked Ms. Seitz for a referral or Ms. Seitz offered to refer him to another attorney.  *Id.*  A day or two later, Ms. Seitz left Mr. Aroche a voicemail referring him to a consumer law attorney.  *Id.*

Mr. Aroche did not reveal to Ms. Seitz the name of his wife, or any other information about the potential case.  *Id.* ¶ 5.  Ms. Seitz did not keep any notes from her single conversation with Mr. Aroche and did not send or receive any emails to/from Mr. Aroche or Plaintiff.  *Id.* ¶¶ 6, 7.  She did not receive or review any documents from Mr. Aroche or Plaintiff. *Id.* ¶ 8.  She never spoke with Mr. Aroche again, and she never spoke with Plaintiff.  *Id.* ¶ 10.

Upon receiving plaintiff's counsel's letter regarding the alleged conflict, as a precaution, this firm promptly screened Ms. Seitz from this matter.  Scoggins Dec. ¶ 6.  Ms. Seitz and Ms. McGair have never spoken to each other regarding this case or Mr. Aroche's phone call.  Seitz Dec. ¶ 9; McGair Dec. ¶ 4.  On or about February 18, 2015, this firm provided written notice to Plaintiff's counsel and Mr. Aroche (who is represented for some purposes by Plaintiff's counsel) that this firm represents Rivermark.  McGair Dec. ¶ 5, Ex. 1.

## III.    Legal Analysis.

### A.    Applicable Standards.

#### 1.    Standards for Motions to Disqualify Counsel.

"A motion to disqualify counsel is not an arrow normally in the quiver of a litigant.  A motion for disqualification of counsel is a drastic measure which courts should hesitate to impose except when of absolute necessity." *In re Marvel*, 251 B.R. 869, 871 (Bankr. N.D. Cal. 2000) (*citing Schiessle v. Stephens*, 717 F.2d 417 (7th Cir. 1983)).  Such motions "are often tactically motivated; they tend to derail the efficient progress of litigation." *Id.* (*citing Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983)).  The moving party, therefore, "carries a heavy burden and must satisfy a high standard of proof." *Id.*  "Because of th[e] potential for abuse, disqualification motions should be subjected to 'particularly strict judicial scrutiny.'" *Shurance v. Planning Control Int'l, Inc.*, 839 F.2d 1347, 1349 (9th Cir. 1988) (*quoting  Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd.*, 760 F.2d 1045, 1049 (9th Cir. 1985)); *see also Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 436, 105 S.Ct. 2757 (1985) (explaining that the court's "discretion must be guided by [the Court's] concern about tactical use of disqualification motions to harass opposing counsel.") (internal quotations omitted); *id.* at 441 (Brennan, J., concurring) ("the tactical use of attorney-misconduct disqualification motions is a deeply disturbing phenomenon in modern civil litigation.").  "To be justified, a motion to

disqualify must be based on present concerns and not concerns which are merely anticipatory and speculative." *In re Marvel*, 251 B.R. at 871 (*citing In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 658 F.2d 1355, 1361 (9th Cir. 1981)).

"Motions to disqualify counsel are decided under state law." *Hitachi, Ltd. v. Tatung Co.*, 419 F.Supp.2d 1158, 1160 (N.D. Cal. 2006) (*citing In re County of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000)).   "Ultimately, however, the decision to disqualify counsel for conflict of interest is within the trial court's discretion." *Id.* (*citing Trone v. Smith*, 621 F.2d 994, 999 (9th Cir. 1980)).   "A district court has the discretion to disqualify counsel as part of its 'prime responsibility for controlling the conduct of lawyers practicing before it[.]'"   *Dimenco v. Serv. Emps. Int'l Union*, No. C 10-03112 SBA, 2011 WL 89999, at *2 (N.D. Cal. Jan. 10, 2011) (*quoting In re Coordinated Pretrial Proceedings*, 658 F.2d at 1358).   "The ethical rules of the forum state . . . govern the Court's disqualification analysis." *Id.*

### 2.      The Applicable Oregon Rule of Professional Conduct.

The Oregon Rules of Professional Conduct provide that "[a] person who consults with a lawyer about the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client."   RPC 1.18(a).   When "no client-lawyer relationship ensues, a lawyer who has learned information from a prospective client shall not use or reveal that information, except as Rule 1.9 would permit with respect to information of a former client." *Id.* at 1.18(b).   Further, the rule provides that:

> A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter <u>if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter</u>, except as provided in paragraph (d).   If a lawyer is disqualified from representation under this paragraph, no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter, except as provided in paragraph (d).

*Id.* at 1.18(c) (underline added).  Nevertheless, even when the elements of Rule 1.18(c) are met, disqualification is not automatic.  Instead, the rule provides, in part, that when the lawyer has received disqualifying information as defined in paragraph (c), representation is permissible if "the lawyer who received the information took *reasonable measures* to avoid exposure to more disqualifying information than was reasonably necessary to determine whether to represent the prospective client; and (i) the disqualified lawyer is *timely screened* from any participation in the matter; and (ii) *written notice* is promptly given to the prospective client." *Id.* at 1.18(d) (emphasis added).

    B.    **Farleigh Wada Witt Is Not Disqualified From Representing Rivermark In This Litigation.**

        1.    **Mr. Aroche Does Not Have Interests In the Instant Dispute.**

Farleigh Wada Witt cannot be disqualified as counsel for numerous reasons—chiefly among them that the sole contact with this firm alleged by Plaintiff is a single phone call made not by Plaintiff, but by Mr. Aroche, her husband.  Aroche Dec., Ex. 2 (Dkt. No. 6-2 at 2); Seitz Dec. ¶ 2.  Mr. Aroche is neither a party to this lawsuit nor a borrower on the subject loan and has no interests in the current dispute.  Gustafson Dec. ¶ 2.  Therefore, Farleigh Wada Witt is not alleged to be representing "a client with <u>interests materially adverse to those of a prospective client</u> in the same or a substantially related matter."  *See* RPC 1.18 (underline added).  Accordingly, there is no ethical conflict under the Oregon Rules of Professional Conduct, and this firm should not be disqualified.

        2.    **Even if Mr. Aroche or Plaintiff Was a Potential Client, Farleigh Wada Witt Has Satisfied Its Duties to a Potential Client.**

Even if Mr. Aroche or his wife could somehow be considered a potential client based on Mr. Aroche's sole phone conversation with Ms. Seitz in which she declined

representation, this firm still is not disqualified because Farleigh Wada Witt has satisfied any obligations it would have to a potential client in these circumstances.

As described in above, the Oregon Rules of Professional Conduct allow a lawyer to represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if (1) the lawyer has <u>not</u> received information from the prospective client that could be significantly harmful to that person in the matter, or (2) the lawyer who received the information took reasonable measures to avoid exposure to more disqualifying information than was reasonably necessary to determine whether to represent the prospective client; and (i) the disqualified lawyer is timely screened from any participation in the matter; and (ii) written notice is promptly given to the prospective client. RPC 1.18(c), (d).

Here, there is no evidence—other than a conclusory statement from Mr. Aroche that he "provided confidential information about [the] case" to this firm—that Plaintiff or her husband provided any information to this firm that could be harmful to Plaintiff. Instead, the evidence demonstrates that Mr. Aroche provided only sufficient information for Ms. Seitz to determine that this firm does not handle the kind of case he described involving a repossession and an alleged assault. Seitz Dec. ¶ 4. That information is contained in Plaintiff's Complaint and is not confidential or harmful to Plaintiff in any conceivable way.

Further, even if Ms. Seitz had obtained disqualifying information, this firm is still entitled to the exception provided in Rule 1.18(d) because Ms. Seitz took reasonable measures to avoid exposure to more disqualifying information than was reasonably necessary to determine whether to represent the prospective client. Seitz Dec. ¶¶ 3–5. She made clear that Farleigh Wada Witt does not generally take cases like the one he described involving allegedly wrongful repossession and a potential assault, and indicated that the firm frequently represents creditors. *Id*. ¶ 4. As soon as she learned the name of the creditor, she ascertained that there was a conflict, told Mr. Aroche that there was a conflict, and declined representation. *Id*. Ms. Seitz did not

obtain or review any documents from Plaintiff or her husband.  *Id*. ¶ 8.  Ms. Seitz promptly referred Mr. Aroche to a consumer law attorney.  *Id*. ¶ 4.

Additionally, Ms. Seitz, the only attorney at Farleigh Wada Witt who had contact with Mr. Aroche, was screened from this matter promptly upon Plaintiff's notification to Farleigh Wada Witt that Plaintiff and/or Mr. Aroche might qualify as a prospective client under Rule 1.18.  Scoggins Dec. ¶¶ 3–6.  This was timely under the circumstances, as Mr. Aroche did not provide to Ms. Seitz the name of his wife (Plaintiff), and Farleigh Wada Witt had no way of knowing that there was a potential conflict in representing Rivermark in this matter until receipt of Plaintiff's notice.[1]  *See Vaccine Center, LLC v. Glaxosmithkline LLC*, No. 2:12-cv-01849-JCM-NJK, 2013 WL 178176, at *2 (D. Nev. Apr. 25, 2013) (finding timely screening of disqualified lawyers where lawyers were promptly screened upon the plaintiff's notification to the firm of the possible violation of Nevada's parallel Rule 1.18); *Beckenstein Enters.-Prestige Park, LLC v. Lichtenstein*, No. X06cv030183486S, 2004 WL 1966863, at *6 (Conn. Aug. 11, 2004) (finding screening timely where disqualified attorney was screened "[a]s soon as he was notified by plaintiffs' counsel of [the disqualified attorney's] discussion with [the plaintiff]").

Moreover, upon receiving the February 12, 2015, notice from Plaintiff's counsel of the potential conflict, Farleigh Wada Witt investigated the conflict and provided written notice to Plaintiff's counsel and Mr. Aroche a mere six days later.  Scoggins Dec. ¶¶ 4, 5; McGair Dec. ¶ 5.  This constitutes prompt written notice.  *See Vaccine Center*, 2013 WL 178176, at *2 (finding prompt notice given where it was provided roughly ten days after receipt of notice of the potential conflict); *Beckenstein*, 2004 WL 1966863, at *6 (finding prompt notice given where it was provided 30 days after lawyer was informed of the possible conflict).

---

[1] It is worth noting that Plaintiff's counsel had spoken to Ms. McGair about the case on at least one other occasion, in which he advocated for an early mediation of the matter, and had requested that Ms. McGair accept service of the complaint on behalf of Rivermark. McGair Dec. ¶ 7.  Plaintiff's counsel did not raise this alleged conflict in any of those prior communications.  *Id*.  Plaintiff's counsel raised the disqualification issue only once Rivermark made clear its intent to defend against Plaintiff's claims.  *Id*.

Accordingly, even if Plaintiff could establish the elements of RPC 1.18(c) in this case, Farleigh Wada Witt qualifies for the exception provided in Rule 1.18(d)(2).  Therefore, Plaintiff's motion to disqualify should be denied.

### 3.     Plaintiff Is Not a Current or Former Client.

Finally, Plaintiff is incorrect that rules 1.7 and 1.9 of the Oregon Rules of Professional Conduct are applicable here because Plaintiff is neither a current client, a former client, nor a third person to whom this firm owes any responsibilities.

Under Rule 1.7, "a lawyer shall not represent a client if the representation involves a current conflict of interest." RPC 1.7(a).  The rule further provides that a "current conflict of interest" exists, in part, if there is "a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person[.]"  *Id*. at 1.7(a)(2).  Additionally, Rule 1.9 sets forth the responsibilities of a lawyer to a former client and provides, in part, that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless each affected client gives informed consent, confirmed in writing." *Id*. at 1.9(a).

Rules 1.7 and 1.9 do not apply here because Ms. Seitz never entered into an attorney-client relationship with Plaintiff.  The entire conversation that Ms. Seitz had with Plaintiff's husband concerned whether Ms. Seitz would agree to be hired to represent Plaintiff in contemplated litigation.  Seitz Dec. ¶ 2.  Ms. Seitz never agreed to do so and expressly declined representation.  *Id*. ¶ 4.  Plaintiff cannot establish, under Oregon law, that she was ever in an attorney-client relationship with this firm.

"The supreme court established the Oregon standard for determining the point at which the attorney client relationship arises in *In re Weidner*, 310 Or. 757, 768 (1990)." *Evraz*

*Inc., N.A. v. Continental Ins. Co.*, No. 3:08-cv-00447-AC, 2013 WL 6174839, at *4 (D. Or. Nov. 21, 2013). "There, the supreme court held that the attorney-client relationship need not be explicit but may be implied when each of two elements is present: (1) the putative client subjectively believes the relationship exists; and (2) based on the evidence, the putative client's belief is <u>objectively reasonable</u>." *Id.* (*citing Weidner*, 310 Or. at 770) (underline added). "In determining whether the attorney-client relationship exists, the court considers all available evidence of reasonableness, but is particularly attentive to whether the putative client intended the relationship to arise and 'whether the services performed were of the kind traditionally done professionally by lawyers.'" *Id.* (*quoting Weidner*, 310 Or. at 768); *see also Tinn v. EMM Labs, Inc.*, 556 F.Supp.2d 1191, 1192–93 (D. Or. 2008) ("'The *evidence must show* that the lawyer understood or should have understood that the relationship existed, or acted as though the lawyer was providing professional assistance or advice on behalf of the putative client.' In sum, having established a subjective belief, the putative client must also show through objective evidence that the lawyer gave him or her a reasonable basis upon which to base this subjective belief.") (*quoting Weidner*, 310 Or. at 770).

Here, Plaintiff presents no evidence, other than her husband's self-serving and conclusory affidavit, that she subjectively believed that Farleigh Wada Witt represented her. For instance, there is no evidence that Plaintiff or her husband ever called Farleigh Wada Witt again after the initial phone call. If Plaintiff believed that an attorney client relationship has formed, one would expect subsequent communications regarding the substance of the representation. There were none. Plaintiff also never notified Farleigh Wada Witt that she had hired different counsel to initiate the instant lawsuit, as would be expected if she actually thought this firm represented her. McGair Dec. ¶ 6. Indeed, while the affidavit presented to this Court makes no mention of the fact that Ms. Seitz promptly declined representation, referred Mr. Aroche to another lawyer, and had no further communications with him, Plaintiff's counsel's initial letter to

Farleigh Wada Witt acknowledged that Ms. Seitz had not accepted representation of either Plaintiff or her husband and had, instead, referred them to another lawyer.[2]  Aroche Dec., Ex. 2. It is undisputed that Ms. Seitz never spoke again with Mr. Aroche or Plaintiff.  Seitz Dec. ¶ 10.

Moreover, even if Plaintiff somehow could be said to have had a subjective belief that an attorney-client relationship existed between herself and Ms. Seitz, Plaintiff cannot satisfy the objective reasonableness prong of the *Weidner* test.  Other than the one and only phone conversation between Mr. Aroche and Ms. Seitz, in which Ms. Seitz told Mr. Aroche that this firm does not handle cases such as the one he briefly described to her and Ms. Seitz's telephone message referring Mr. Aroche to a consumer law attorney, Ms. Seitz and Farleigh Wada Witt took no action whatsoever on behalf of Plaintiff, nor did they ever provide any legal advice to Plaintiff.  Therefore, no services were rendered that could have given Plaintiff a reasonable belief that this firm represented her.

*Philin Corp. v. Westhood, Inc.*, No. CV-04-1228-HU, 2005 WL 582695 (D. Or. Mar. 11, 2005) is instructive.  In that case, Judge Hubel found that a putative client's declarations established his subjective belief in the existence of an attorney-client relationship where the putative client and attorney had met several years earlier, and after that single meeting, the two exchanged emails during the course of which the attorney wrote that he would need to run an updated conflict check, discussed his hourly rate, and mentioned the creation of a retainer agreement.  *Id*. at *11.  Later, the attorney conceded that he had given legal advice to the putative client, that he had discussed possible litigation against that person's family corporation, and specifically discussed asset protection as well as appropriate terms of engagement. Taken together, the district court found that "these facts provide[d] the requisite objective basis for [the putative client's] subjective belief about the existence of an attorney-client relationship." *Id*.

---

[2] Ms. Seitz and Mr. Aroche have different recollections as to whom Ms. Seitz referred him to, but that is immaterial to the question of whether an attorney-client relationship was formed.

Similarly, Judge Haggerty found an objective basis for a putative client's subjective belief in the existence of an attorney-client relationship where the lawyer engaged in discussions with the vice-president, director and shareholder of a closely held corporation about potential litigation that could seriously impair the financial well being of the putative clients. *Admiral Ins. Co. v. Mason, Bruce & Girard, Inc.*, No. CV 02-818-HA, 2002 WL 31972159, at *1 (D. Or. Dec. 5, 2002). The parties in that case agreed that they had several conversations regarding the litigation at issue and the lawyer had entered the putative client into the firm's conflict system.

By contrast, in *Tinn*, Judge Acosta found that the plaintiff had not produced evidence sufficient to satisfy the requirement of an objectively reasonable basis in support of his subjective belief that an attorney client relationship existed where the putative client "produced no written agreement, correspondence, e-mails, or other similar tangible indicia that would support a reasonable conclusion that [the lawyer] had agreed to act as [the putative client's] attorney." 556 F.Supp.2d at 1193–94. The court also noted that there was no evidence that the putative client compensated the attorney for his alleged legal services. *Id*. at 1194. Although, as the court recognized, payment of fees is not necessary to prove an attorney-client relationship, its absence does not weigh in the putative client's favor. *Id*. In that case, the plaintiff's only evidence of the existence of an attorney-client relationship consisted of declarations of two individuals who claimed to have heard parts of phone conversations between plaintiff and the lawyer. The alleged attorney submitted a declaration disputing the putative client's characterization of the relationship, and that, coupled with the lack of objective evidence, led the court to conclude that the evidence was insufficient to create an objective basis for the plaintiff's subjective belief that he shared an attorney-client relationship. *Id*. at 1194–95.

Similarly, here, Plaintiff has not produced any agreement, correspondence, emails, or any tangible indicia that would support a reasonable conclusion that Farleigh Wada

Witt had agreed to act as Plaintiff's attorney.  Mr. Aroche, her husband, had a single telephone conversation with Ms. Seitz in which Ms. Seitz ascertained just enough information to tell him that this firm does not handle cases like the one he described and declined representation.  Seitz Dec. ¶¶ 2–4.  Plaintiff concedes that the result of the conversation was that Ms. Seitz declined to accept representation and referred Mr. Aroche to another attorney.  Aroche Dec., Ex. 2.  This falls far short of the numerous conversations and actions taken by the attorneys in the *Philin Corp*. and *Admiral Insurance* cases cited above.  In light of Ms. Seitz's declaration to the contrary, Plaintiff cannot establish that she had an attorney-client relationship with this firm.

Accordingly, Rules 1.7 and 1.9 do not apply and are not a basis upon which the Court could grant her motion.

**IV.    <u>Conclusion.</u>**

For the foregoing reasons, Rivermark Community Credit Union respectfully requests that the Court deny Plaintiff's motion to disqualify the law firm Farleigh Wada Witt.

DATED this 13th day of March, 2015.

FARLEIGH WADA WITT


By:  /s/ Trish A. Walsh
    Kimberley Hanks McGair, OSB #984205
    Trish A. Walsh, OSB #101604
    (503) 228-6044
    kmcgair@fwwlaw.com
    twalsh@fwwlaw.com
    Attorneys for Defendant Rivermark
    Community Credit Union

## CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2015, I electronically filed the foregoing with

the Clerk of the Court using the CM/ECF system which will send notification of such filing to

the following:

>Michael Fuller
>OlsenDaines, P.C.
>111 S.W. Fifth Avenue, 31st Floor
>Portland, OR  97204
>
>Kelly D. Jones
>819 SE Morrison St., Ste. 255
>Portland, OR  97214
>        Attorneys for Plaintiff

I hereby certify that I have mailed by United States Postal Service the document

to the following non-CM/ECF participants:

>American Asset Recovery
>701 SE  Hale Pl.
>Gresham, OR  97080
>
>Christopher Payne
>701 SE Hale Pl.
>Gresham, OR  97080
>
>Anthony Payne, Jr.
>701 SE Hale Pl.
>Gresham, OR  97080

>FARLEIGH WADA WITT
>
>
>By: _/s/ Trish A. Walsh_____
>    Kimberley Hanks McGair, OSB #984205
>    Trish A. Walsh, OSB #101604
>    121 SW Morrison St., Suite 600
>    Portland, Oregon 97204
>    (503) 228-6044 (phone)
>    (503) 228-1741 (fax)
>    kmcgair@fwwlaw.com
>    twalsh@fwwlaw.com
>    Attorneys for Defendant Rivermark
>    Community Credit Union