IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SANDRA JIMENEZ,                                3:15-CV-00128-BR

       Plaintiff,                          OPINION AND ORDER

v.

RIVERMARK COMMUNITY CREDIT
UNION, AMERICAN ASSET
RECOVERY, CHRISTOPHER PAYNE,
and ANTHONY PAYNE, JR.,

       Defendants.


**MICHAEL R. FULLER**
OlsenDaines, PC
U.S. Bancorp Tower
111 S.W. Fifth Avenue, 31st Floor
Portland, OR 97204
(503) 201-4570

**KELLY D. JONES**
819 S.E. Morrison Street
Suite 255
Portland, OR 97214
(503) 847-4329

       Attorneys for Plaintiff


1 - OPINION AND ORDER

**KIMBERLEY HANKS MCGAIR**
**PATRICIA A. WALSH**
Farleigh Wada Witt, PC
121 S.W. Morrison Street
Suite 600
Portland, OR 97204-3136
(503) 228-6044

    Attorneys for Defendant Rivermark Community Credit Union

**CHRISTOPHER PAYNE**
701 S.E. Hale Place
Greham, OR 97080
(503) 442-3282

    Defendant, *Pro Se*

**ANTHONY PAYNE, JR.**
701 S.E. Hale Place
Gresham, OR 97080
(503) 442-3282

    Defendant, *Pro Se*

**BROWN, Judge.**

    This matter comes before the Court on Plaintiff Sandra Jimenez's Motion (#5) to Disqualify the Farleigh Wada Witt Law Firm. For the reasons that follow, the Court **DENIES** Plaintiff's Motion.

## BACKGROUND

    The following facts are taken from the Complaint and the parties' filings related to the Motion for Disqualification.

    Plaintiff alleges in her Complaint that the conduct underlying this action stems from the repossession of a 2012

2 - OPINION AND ORDER

Chrysler Town & Country vehicle financed by the uncle of Plaintiff's husband, Alberto Aroche,[1] through Defendant Rivermark Community Credit on July 18 or 19, 2013. Rivermark affirms in its Answer that the loan made to Alberto Aroche was secured by the vehicle and asserts Plaintiff was identified as a co-applicant on the loan.[2] No payments were ever made on the loan.

At some point Rivermark hired Defendant American Asset Recovery (AAR) to repossess the vehicle.

On January 27, 2014, AAR repossessed the vehicle from Plaintiff's home.

At some point in 2014 Plaintiff's husband, Francisco Aroche, called the Farleigh Wada Witt law firm and spoke to attorney Margot Seitz on behalf of Plaintiff because Plaintiff does not speak English. To the best of Seitz's recollection, Francisco Aroche told her that "a company attempted to repossess his vehicle . . . [and] during the repossession, someone involved allegedly shoved or punched his wife. I believe he also stated that his minor daughter saw this event and he was concerned for her safety." Decl. of Margot Seitz at ¶ 3.

---

[1] Plaintiff asserts she has never had an account or loan of any kind with Rivermark and has never been to a Rivermark branch. Plaintiff asserts Rivermark forged Plaintiff's signature on falsified loan documents "in hopes of tricking her into paying a debt it knew she didn't owe."

[2] It appears to be undisputed that Plaintiff's husband, Francisco Aroche, was not a borrower or co-applicant on the loan.

3 - OPINION AND ORDER

Seitz also testifies in her Declaration that, to the best of her recollection, before Francisco Aroche told her any further details, she advised him that

> Farleigh Wada Witt generally does not handle cases like the one he described involving allegedly wrongful repossession and a potential assault.  I believe I also indicated to [Francisco Aroche] that I do not handle criminal matters and that he may want to seek advice about criminal assault and whether to file a police report.  I recall asking [Francisco Aroche] for the name of the repossessing creditor and indicated that Farleigh Wada Witt frequently represents creditors so there also may be a conflict.  To the best of my present recollection, upon being told the name of the creditor, I ascertained that there was a conflict and declined representation.  I informed [Francisco Aroche] of the conflict.  At that point he either asked me for or I offered to refer him to another attorney.  To the best of my present recollection, a day or two later I called [Francisco Aroche] back and left him a voicemail message referring him to a consumer law attorney.

Seitz Decl. at ¶ 4.  Francisco Aroche testifies in his Declaration, on the other hand, that "the Farleigh firm" advised him that his wife had strong claims against Rivermark.  Decl. of Francisco Aroche at ¶ 5.

On January 26, 2015, Plaintiff filed an action in this Court alleging:  (1) a claim for violation of the Unfair Debt Collection Practices Act, 15 U.S.C. § 1692f(6)(A) against AAR; (2) claims for intentional infliction of emotional harm, intrusion on seclusion, and negligence against Rivermark; and (3) claims for common-law assault, battery, false arrest, intentional infliction of emotional harm, and intrusion on

4 - OPINION AND ORDER

seclusion against all Defendants.

Plaintiff alleges in her Motion to Disqualify that Rivermark initially hired the Monson Law Office to defend it from Plaintiff's action. Plaintiff points to a January 27, 2015, email to Plaintiff's counsel from Miles Monson of the Monson Law Office in which Monson advises Plaintiff's counsel: "I just learned that my client, Rivermark Community Credit Union, is going to use other litigation counsel; therefore, I will not be able to accept service." Pl.'s Ex. 1 at 1.

In its Response to Plaintiff's Motion, Rivermark does not address the January 27, 2015, email but instead relies on the Declaration of Harold Scoggins, President of Farleigh Wada, in which he testifies "Farleigh Wada Witt has represented Rivermark for at least twenty years." Scoggins Decl. at ¶ 2.

On February 12, 2015, Rivermark's counsel at Farleigh Wada, Kimberly Hanks McGair, received a letter from Plaintiff's counsel alleging that Farleigh Wada was conflicted from representing Rivermark in this matter because an attorney at Farleigh Wada had consulted with Francisco Aroche. On February 13, 2015, McGair provided the letter to Scoggins and Scoggins began an investigation of Farleigh Wada's alleged conflict. Scoggins discovered Francisco Aroche had contacted Seitz in January 2014 and Seitz had referred Francisco Aroche to another firm. Nevertheless, Farleigh Wada implemented procedures to screen

5 - OPINION AND ORDER

Seitz from this matter.

On February 18, 2015, McGair sent Plaintiff's counsel a letter in which she advised him that Farleigh Wada did not believe there was a conflict of interest and it would not disqualify itself.

On February 27, 2015, Plaintiff filed a Motion to Disqualify in which she seeks to disqualify Farleigh Wada from representing Rivermark in this matter on the ground that Farleigh Wada previously had an implied attorney-client relationship with Plaintiff.

On March 19, 2015, the Court held a conference with the parties regarding Plaintiff's Motion and other matters.  The Court directed Rivermark to file a Reply to the Motion to Disqualify.

On March 24, 2015, Rivermark filed a Reply and the Court took this matter under advisement.


### **DISCUSSION**

As noted, Plaintiff moves to disqualify Farleigh Wada from representing Rivermark in this matter on the ground that Farleigh Wada previously had an implied attorney-client relationship with Plaintiff.

The Oregon Supreme Court has made clear that it determines the standards that govern attorneys in Oregon.  *See, e.g., Brown*

6 - OPINION AND ORDER

*v. Or. State Bar,* 293 Or. 446, 451 (1982)("The disciplinary rules are standards adopted by this court to govern the supervision and discipline of attorneys.  The professional discipline of attorneys is within the exclusive jurisdiction of this court."). Thus, this District, in accordance with the rulings of the Ninth Circuit, has held "[t]he primary responsibility of regulating the conduct of lawyers in federal practice lies with the district courts, governed by the rules of professional conduct of the state in which that district lies." *Evraz Inc., N.A. v. Cont'l Ins. Co.,* No. 3:08-CV-00447-AC, 2013 WL 6174839, at *2 (D. Or. Nov. 21, 2013)(citing *Gas-A-Tron of Az. v. Union Oil Co. of Cal.*, 534 F.2d 1322, 1325 (9th Cir. 1976)).  In addition, the Ninth Circuit has held district courts have the duty and responsibility to control and to supervise the conduct of the attorneys practicing before them.  *Erickson v. Newmar Corp.*, 87 F.3d 298, 300, 303 (9th Cir. 1996).  Courts in other circuits have reached the same conclusions. *See, e.g., SST Castings, Inc. v. Amana Appliances, Inc.*, 250 F. Supp. 2d 863, 865 (S.D. Ohio 2002)("[T]he power to disqualify an attorney from a case is incidental to all courts, and a district court is obliged to consider unethical conduct by an attorney in connection with any proceeding before it.").  Thus, in this case Oregon's Rules of Professional Conduct serve as guideposts for this Court to analyze Plaintiff's Motion.

7 - OPINION AND ORDER

Notwithstanding the duties to control and to supervise the conduct of the attorneys and the duty to protect the attorney-client relationship, motions to disqualify counsel are disfavored. *Certain Underwriters at Lloyd's, London v. Argonaut Ins. Co.,* 264 F. Supp. 2d 914, 918 (N.D. Cal. 2003)(citation and internal quotation omitted). The party moving to disqualify must satisfy a "high standard of proof." *Sabrix v. Carolina Cas. Ins. Co.,* No. CV-02-1470-HU, 2003 WL 23538035, at *1 (D. Or. July 23, 2003)(citing *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983)).

> On the one hand, because a motion to disqualify is often tactically motivated, and can be disruptive to the litigation process, it is a drastic measure that is generally disfavored. . . . At the same time, the paramount concern must be the preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar.

*Argonaut*, 2003 WL 1922970, at *2 (citation and internal quotation omitted).

**I.  Applicable Rules of Professional Conduct**

The parties disagree about the standard that the Court must apply in its analysis. Plaintiff asserts the correct standard is found in Oregon Rules of Professional Conduct 1.7(a) and 1.9. Rule of Professional Conduct 1.7(a) provides in pertinent part:

> (a)  Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a current conflict of interest. A current conflict of interest exists if:

8 - OPINION AND ORDER

>> (1)   the representation of one client will be directly adverse to another client;
>
> (2)   there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

Rule of Professional Conduct 1.9(a) provides:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless each affected client gives informed consent, confirmed in writing.

Rivermark, on the other hand, asserts Plaintiff was only a prospective client. According to Rivermark, because Plaintiff never became a client of Farleigh Wada, the applicable standard is found in Rule of Professional Conduct 1.18 , which provides:

> (a)   A person who consults with a lawyer about the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client.
>
> (b)   Even when no client-lawyer relationship ensues, a lawyer who has learned information from a prospective client shall not use or reveal that information, except as Rule 1.9 would permit with respect to information of a former client.
>
> (c)   A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter, except as provided in paragraph (d).  If a lawyer is disqualified from representation under this paragraph, no lawyer in

9 - OPINION AND ORDER

> a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter, except as provided in paragraph (d).
>
> (d) When the lawyer has received disqualifying information as defined in paragraph (c), representation is permissible if:
>
> * * *
>
> > (2) the lawyer who received the information took reasonable measures to avoid exposure to more disqualifying information than was reasonably necessary to determine whether to represent the prospective client; and
> >
> > > (i) the disqualified lawyer is timely screened from any participation in the matter; and
> > >
> > > (ii) written notice is promptly given to the prospective client.

Rivermark notes the conversation that Francisco Aroche (who is not a signatory to the loan at issue) had with Seitz concerned whether Seitz would agree to represent Plaintiff in her contemplated litigation. Seitz testifies in her Declaration that she refused to represent Plaintiff, and Plaintiff does not contradict this. As noted, Seitz states she recommended other counsel to Plaintiff, and the record reflects Plaintiff, in fact, retained other counsel.

In *In re Weidner* the Oregon Supreme Court has set out the standard for determining the point at which the attorney-client relationship exists. 310 Or. 757, 768 (1990). *See also Evraz,* 2013 WL 6174839, at *4. In *Weidner* the Oregon Supreme Court held

10 - OPINION AND ORDER

an attorney-client relationship does not have to be explicit, but instead may be implied when two elements are present:  (1) the putative client subjectively believes the relationship exists and (2) the putative client's belief is objectively reasonable and based on "evidence of objective facts on which a reasonable person would rely as supporting existence of that" belief. *Weidner*, 310 Or. at 770.

When determining whether an attorney-client relationship exists, the court should consider all available evidence of reasonableness, particularly evidence that the putative client put

> the lawyer on notice that the putative client [believed the relationship existed]; . . . the lawyer shared the client's subjective intention to form the relationship; or . . . that the lawyer acted in a way that would induce a reasonable person in the client's position to rely on the lawyer's professional advice.  The evidence must show that the lawyer understood or should have understood that the relationship existed, or acted as though the lawyer was providing professional assistance or advice on behalf of the putative client.

*Id*.  "[H]aving established a subjective belief, the putative client must also show through objective evidence that the lawyer gave him or her a reasonable basis upon which to base this subjective belief."  *Id*.

Here Plaintiff does not point to any evidence that establishes she subjectively believed Farleigh Wada represented her.  In fact, the record reflects Plaintiff did not contact

11 - OPINION AND ORDER

Farleigh Wada again after her husband called that law firm, Plaintiff found other counsel, and Plaintiff did not notify Farleigh Wada that she had hired other counsel as would be expected if she believed she had been represented by Farleigh Wada.  In addition, in a February 12, 2015, letter to McGair, Plaintiff's counsel notes Seitz "ultimately referred [Francisco Aroche] to Motschenbacher & Blatner."  Aroche Decl., Ex. 2.

Even if Plaintiff could establish she subjectively believed Farleigh Wada represented her, the Court concludes the record does not include any evidence to support an objectively reasonable basis for such a belief.  The Court notes the circumstances of this matter are similar to those in *Tinn v. EMM Labs, Inc.*, 556 F. Supp. 2d 1191, 1192-93 (D. Or. 2008).  In *Tinn* the court found the plaintiff did not produce evidence sufficient to satisfy the requirement of an objectively reasonable basis for his subjective belief that an attorney-client relationship existed when the plaintiff "produced no written agreement, correspondence, e-mails, or other similar tangible indicia that would support a reasonable conclusion that [the lawyer] had agreed to act as [the plaintiff's] attorney."  556 F. Supp. 2d at 1193-94.  The *Tinn* court also pointed out there was not any evidence that the plaintiff compensated the attorney for any alleged legal services.  *Id*. at 1194.  Although, as the court acknowledged, payment of fees is not necessary to prove an

attorney-client relationship, its absence does not weigh in the putative client's favor. *Id*. In *Tinn* the plaintiff's only evidence of the existence of an attorney-client relationship consisted of declarations by two individuals who claimed to have heard parts of telephone conversations between the plaintiff and the lawyer. The attorney, however, submitted a declaration disputing the plaintiff's characterization of the relationship, which, coupled with the lack of objective evidence, led the court to conclude that the evidence was insufficient to create an objective basis for the plaintiff's subjective belief that he shared an attorney-client relationship. *Id*. at 1194-95.

On this record the Court concludes Plaintiff was not an actual client of Farleigh Wada and was, at most, a prospective client. Thus, Rule of Professional Conduct 1.18 governs the Court's analysis.

**II.  Analysis under Rule 1.18**

**A.  Francisco Aroche was acting as Plaintiff's agent when he contacted Farleigh Wada.**

As noted, Rule 1.18(a) provides: "A person who consults with a lawyer about the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client."

Rivermark asserts Plaintiff was not, in fact, a prospective client of Farleigh Wada because she did not personally consult with that firm. As noted, Franciso Aroche

13 - OPINION AND ORDER

called and consulted with the law firm, he is not a signatory to the loan, and he is not a party in interest in this matter.

Plaintiff, in turn, asserts Franciso Aroche called on her behalf because Plaintiff does not speak English. Plaintiff notes Oregon law confers protections to persons who are reasonably necessary to facilitate attorney-client communications, and, therefore, Franciso Aroche's communications with Seitz as Plaintiff's English-language facilitator should not bar Plaintiff from being a prospective client. The Court agrees.

The Court finds Franciso Aroche was acting as Plaintiff's agent when he called Farleigh Wada because Plaintiff was unable to communicate adequately herself. The Court, therefore, concludes the fact that Franciso Aroche, acting as Plaintiff's agent, contacted Farleigh Wada is not sufficient to bar Plaintiff from being a prospective client under Rule 1.18(a).

**B.  Farleigh Wada did not receive information that could be significantly harmful to Plaintiff.**

Rivermark asserts even if Plaintiff could be considered a prospective client under Rule 1.18(a), Farleigh Wada should not be disqualified because it did not receive information from Plaintiff that "could be significantly harmful to [Plaintiff]" and/or Farleigh Wada

> took reasonable measures to avoid exposure to more disqualifying information than was reasonably necessary to determine whether to represent the prospective client; and (i) the disqualified lawyer [was] timely screened from any

14 - OPINION AND ORDER

>            participation in the matter; and (ii) written
>            notice [was] promptly given to the prospective
>            client.

Rules of Professional Conduct 1.18(c), (d).

      Rivermark asserts there is not any evidence that Francisco Aroche provided confidential information to Seitz or information that could be harmful to Plaintiff.  Seitz testifies in her Declaration that to the best of her recollection Franciso Aroche told her "a company attempted to repossess his vehicle . . . [and] during the repossession, someone involved allegedly shoved or punched his wife. . . .  [H]e also stated that his minor daughter saw this event and he was concerned for her safety."  Franciso Aroche also provided Seitz with the name of the creditor, at which point Seitz told Franciso Aroche there was likely a conflict and she could not represent him.

      Plaintiff, nevertheless, asserts Franciso Aroche told Seitz at least two pieces "of confidential information previously unknown to plaintiff's counsel:  (1) punches may have been thrown by Rivermark's agents during the assault and (2) plaintiff's child, who witnessed the assault, may have felt endangered during the encounter."  In her Complaint, however, Plaintiff alleges AAR representatives assaulted and battered her "by physically pinning her into her garage door, in front of her young daughter," and the information that Franciso Aroche allegedly provided to Seitz is consistent with that version of the facts.

15 - OPINION AND ORDER

On this record the Court concludes the information that Franciso Aroche provided to Seitz is not the kind of disqualifying information to which Rule 1.18 refers.

### C. Farleigh Wada took reasonable measures to avoid exposure.

Rivermark asserts even if the information transmitted to Seitz had been disqualifying information within the meaning of Rule 1.18(c), Farleigh Wada is still entitled to the exception provided in Rule 1.18(d).  Specifically, Rivermark notes Seitz took reasonable measures to avoid exposure to more disqualifying information than was reasonably necessary to determine whether to represent Plaintiff, made clear to Franciso Aroche that Farleigh Wada does not generally take cases like the one he described, and indicated the firm frequently represents creditors.  As soon as Seitz learned the name of the creditor, she ascertained she had a conflict, told Francisco Aroche that she had a conflict, and declined representation.

In addition, Farleigh Wada screened Seitz from this matter as soon as Plaintiff notified Farleigh Wada that Plaintiff might qualify as a prospective client under Rule 1.18.  According to Rivermark, the screening was timely under the circumstances because Francisco Aroche did not provide Seitz with the name of his wife (Plaintiff), and Farleigh Wada had no way of knowing there was a potential conflict in representing Rivermark in this matter until receipt of Plaintiff's notice.  *See Vaccine Center*,

16 - OPINION AND ORDER

*LLC v. Glaxosmithkline LLC*, No. 2:12-cv- 01849-JCM-NJK, 2013 WL 178176, at *2 (D. Nev. Apr. 25, 2013)(finding timely screening of disqualified lawyers when the lawyers were promptly screened as soon as the plaintiff's notified to the law firm of the possible violation of Nevada's parallel Rule 1.18).  *See also Beckenstein Enters.-Prestige Park, LLC v. Lichtenstein*, No. X06cv030183486S, 2004 WL 1966863, at *6 (Conn. Aug. 11, 2004)(finding screening was timely when the disqualified attorney was screened "[a]s soon as he was notified by plaintiffs' counsel of [the disqualified attorney's] discussion with [the plaintiff.]").

      Finally, when Farleigh Wada received Plaintiff's February 12, 2015, letter notifying it of a possible conflict, the law firm investigated and provided written notice to Plaintiff's counsel six days later.  Courts have found Rule 1.18(d) and other similar state rules of professional conduct were satisfied when it took counsel much longer to provide such notice.  *See, e.g.*, *Vaccine Center*, 2013 WL 178176, at *2 (finding the notice was prompt when it was provided roughly ten days after receipt of notice of the potential conflict); *Beckenstein*, 2004 WL 1966863, at *6 (finding the notice was prompt even when it was provided 30 days after the lawyer was informed of the possible conflict).

      Plaintiff, nevertheless, asserts Farleigh Wada did not comply with the notice requirements of Rule 1.18(d)(ii) because

17 - OPINION AND ORDER

"it did not add plaintiff's husband to its conflict list after consulting with him, and it only sent him written notice after plaintiff asked to confer on the instant motion."  It is not clear what kind of prejudice Plaintiff is asserting when she argues Farleigh Wada did not add Franciso Aroche to its conflict list.  In any event, Rule 1.18(d)(ii) requires only that "written notice is promptly given to the prospective client."  There is not any conflict-list requirement.  In addition, as noted, Plaintiff rather than Franciso Aroche was the prospective client, and, therefore, it does not appear Rule 1.18(d)(ii) required Farleigh Wada to give notice to Franciso Aroche after Farleigh Wada timely notified Plaintiff as required under Rule 1.18(d)(ii).

On this record the Court concludes Farleigh Wada complied with the requirements of Rule 1.18(d), and, therefore, even if Plaintiff was a prospective client, Farleigh Wada is not disqualified from representing Rivermark in this matter.

Accordingly, the Court denies Plaintiff's Motion to Disqualify.

## **CONCLUSION**

For these reasons, the Court **DENIES** Plaintiff's Motion (#5)

18 - OPINION AND ORDER

to Disqualify the Farleigh Wada Witt Law Firm.

    IT IS SO ORDERED.

    DATED this 11th day of May, 2015.

                                          /s/ Anna J. Brown

                                          _____
                                          ANNA J. BROWN
                                          United States District Judge

19 - OPINION AND ORDER